## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NEXEON LIMITED,                    )
                                   )
            Plaintiff              )        **PUBLIC - REDACTED VERSION**
                                   )
    v.                             )        C.A. No. 15-955 (RGA)
                                   )
EAGLEPICHER TECHNOLOGIES, LLC      )        ███████████████
and ONED MATERIAL LLC,             )
                                   )
            Defendants.            )


**PLAINTIFF NEXEON LIMITED'S REPLY IN SUPPORT OF ITS MOTION
TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE AND
DISMISS DEFENDANTS' DECLARATORY JUDGMENT COUNTERCLAIMS
<u>AND RENEWED MOTION TO STAY</u>**


OF COUNSEL:

S. Richard Carden
Ann C. Palma
McDONNELL BOEHNEN
HULBERT & BERGHOFF LLP
300 South Wacker Drive
Chicago, Illinois 60606
(312) 935-2379
carden@mbhb.com
palma@mbhb.com

Mary B. Matterer (#2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
mmatterer@morrisjames.com

*Attorneys for Plaintiff Nexeon Ltd.*


Dated: June 12, 2018

## <u>TABLE OF CONTENTS</u>

I.     Introduction ............................................................................................................1

II.    Defendants Will Not Be Unfairly Prejudiced By Dismissal of This Action
Without Their Proposed Curative Conditons ........................................................2

       A.    The Court Should Not Extend the Motion to Dismiss to Anything Called
SiNANOde, No Matter What the Composition ......................................................2

       B.    The Court Need Not Address Anyone Other Than the Defendants in
Granting Nexeon's Motion to Dismiss. ................................................................6

III.    Consideration of Costs and Fees is Premature, But in Any Event Defendants Are
Entitled to Neither ................................................................................................7

       A.    Defendants Would Not Be Entitled to Attorneys' Fees Even If the Issue
Were Ripe for Consideration ................................................................................7

       B.    Defendants Should Not Be Awarded Costs Even If They Are Eventually
Deemed A Prevailing Party ..................................................................................8

IV.    Defendants' "Statement of Facts" is Highly Argumentative, Inaccurate, and
Ultimately Irrelevant to the Issue at Hand ...........................................................9

V.    A Stay Until the Court Decides on the Motion to Dismiss Creates No Prejudice
To Defendants but Instead Promotes Efficiency in This Case ..........................10

VI.    Conclusion ........................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Esquire, Inc. v. Carga Enters., Inc.*,
  185 F.2d 14 (7th Cir. 1950) ................................................................................... 2

*McLaughlin v. Board of Trustees of National Elevator Industry Health Benefit Plan*,
  686 Fed.Appx. 118 (3d Cir. 2017) ......................................................................... 7

*Molinaro v. Am. Tel. and Tel. Co.*,
  460 F.Supp. 673 (E.D.Pa. 1978) ............................................................................ 6

*Mondero v. Lewes Surgical & Medical Associates P.A.*,
  2017 WL 262053 at *2 (D. Del. Jan. 18, 2017) ..................................................... 7

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S.Ct. 1749, 188 L.Ed.2d 816 (2014) .............................................................. 7

*Oracle Corp. v. Parallel Networks, LLP*,
  588 F.Supp.2d 549, (D.Del. 2008) ......................................................................... 6

*Roche Diag. Op, Inc. v. Abbott Diabetes Care, Inc.*,
  2018 WL 2108197 at *2 (D.Del May 7, 2018) ...................................................... 8

**Exhibit List**

| Exhibit | Description |
|---------|-------------|
| A | Proposed Order |
| B | Summary timeline of OneD's contradictory testimony |
| C | Summary timeline of EaglePicher's contradictory testimony |
| D | OneD's Amended and Supplemental Responses to Nexeon's First Set of Interrogatories |
| E | Deposition Transcript of Vincent Pluvinage, dated 12/14/2017, excerpt at 30-39, 55, 61-62, 108, 162-163, 190-191 |
| F | Deposition Transcript of Yimin Zhu, dated 12/15/2017, excerpt at 24-26, 147-151 |
| G | Deposition Transcript of Ronald Nowlin, 2/16/2018, excerpt at 19-36 |
| H | OneD's transmittal letter re 32.8% Si sample, dated August 31, 2017 |
| I | EaglePicher's Amended and Supplemental Responses to Nexeon's First Set of Interrogatories, Feb. 15, 2018 |
| J | Email from V. Pluvinage to S. Brown, dated May 24, 2018 |
| K | OneD's Redacted Draft Complaint for Breach of Contract against Nexeon Limited |
| L | OneD's transmittal letter re 8% SiNANOde sample, dated June 28, 2017 |
| M | OneD's transmittal letter re 8.1% Si sample, dated August 29, 2017 |
| N | OneD's Responses to Nexeon's First Set of Interrogatories (Nos. 1-13) |
| O | Archive.org capture of OneD's website on March 10, 2017 |
| P | EaglePicher's Responses to Nexeon's First Set of Interrogatories |
| Q | Nexeon Letter responding to Defendants, Dated May 30, 2018 |
| R | Mondero v. Lewes Surgical & Medical Associates P.A., 2017 WL 262053 at *2 (D. Del. Jan. 18, 2017)<br><br>Roche Diag. Op, Inc. v. Abbott Diabetes Care, Inc., 2018 WL 2108197 at *2 (D.Del May 7, 2018) |

## I.   Introduction

Rather than responding to the issue at hand, Defendants have filed a diatribe about their alleged entitlement to summary judgment, costs and attorneys' fees - issues that are not before the Court. Even were those issues ripe for discussion or had they been properly presented to the Court, Defendants' claims are based on so-called "facts" which are nothing more than unsupported regurgitation of the arguments they have repeatedly made in forcing this litigation to continue unnecessarily. As such, all of Defendants' discussion about non-infringement, invalidity, and awards of costs and attorneys' fees should be summarily dismissed.

Even with respect to their arguments on the only issue at hand – Nexeon's Motion to Dismiss with Prejudice – Defendants far overreach in their requests. Ignoring the statements they made to the Court at the May 14, 2018 hearing on Nexeon's Motion to Dismiss Without Prejudice, Defendants now state that they will not agree to a dismissal with prejudice unless it is extended to (1) amorphous undefined future products and processes that have never been at issue in the case and may very well be colorably different than the products and processes that were at issue, and (2) non-parties with whom Defendants have any sort of relationship, rather than simply parties in privity with Defendants. Neither of these requests is proper or warranted.

Finally, Defendants have not established that they will suffer any undue prejudice if the motion is granted. Instead, they pose a series of speculative, hypothetical issues, based on a misreading of the motion. Therefore, Nexeon respectfully requests that the Court enter the Draft Order attached as Exhibit A (1) dismissing the Second Amended Complaint with prejudice, (2) dismissing Defendants' counterclaims for lack of jurisdiction, and (3) ordering each party to bear its own costs and fees.

**II.    Defendants Will Not Be Unfairly Prejudiced By Dismissal of This Action Without Their Proposed Curative Conditions**

Defendants claims of prejudice result from (1) a misreading of the motion to dismiss, (2) reliance on Nexeon's covenant not to sue and arguments in support of its motion to dismiss without prejudice, which are not relevant to the presently pending motion, and (3) a contention that they are entitled to *res judicata* or collateral estoppel effects far beyond what is appropriate in view of the actual complaint and the course of discovery. As an initial matter, Defendants misstate the pending motion. Nothing in the motion suggests that it is limited to 8% SiNANOde. One of the sole points where Nexeon and Defendants appear to agree is that the dismissal should have effect with respect to the products and processes described in the Second Amended Complaint as further developed by both fact and expert discovery. Def. Br., D.I. 195 at 10 (citing *Esquire, Inc. v. Carga Enters., Inc.*, 185 F.2d 14, 17 (7th Cir. 1950)). But what the motion should not do is extend to products or processes never involved in or contemplated by the suit, or entities not in privity with Defendants with respect to the issues in the suit, which Defendants now seek to do. Nexeon's proposed order appropriately addresses the actual claims and parties and eliminates the threat of suit with respect to those claims, thus divesting Defendants of declaratory judgment jurisdiction for their invalidity and unenforceability counterclaims.

A.    The Court Should Not Extend the Motion to Dismiss to Anything Called SiNANOde, No Matter What the Composition

Defendants assert that the dismissal must cover all claims of the asserted patents against any products Defendants may develop in the future, based on Defendants' post-discovery assertions about their research plans moving forward. First, all claims of the patents-in-suit were never asserted against the SiNANOde products and processes, and thus it would be improper to extend the motion to dismiss to non-asserted claims. Moreover, Defendants' claims that they

have provided "insurmountable evidence" of their plans moving forward could not be further from the truth. What Defendants have provided is an ever-evolving and irreconcilably conflicting set of testimony about their plans, with much of the evolution coming after the close of fact discovery in response to Nexeon's various motions. Defendants attempt to make SiNANOde a moving target that Nexeon could never hit, no matter how its motion to dismiss was phrased. Nexeon has provided a summary timeline of OneD's contradictory testimony at Ex. B and EaglePicher's at Ex. C.



As was made clear during discovery, OneD's focus ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g.,* Ex. B; Ex. D (OneD's Amended and Supplemental Responses to Nexeon's First Set of Interrogatories) at 6-7; Ex. E (Dep. of Vincent Pluvinage) at 163:14-24; Ex. F (Dep. of Yimin Zhu) at 147:14-18. EaglePicher ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. G (Dep. of Ron Nowlin) at 23:24-25:19. Neither OneD nor its predecessor Nanosys ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. F at 24:22-26:9), and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. H (8/31/17 Letter from Fletes to Carden). Similarly, OneD testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. D at 16.

Shortly before the close of discovery in December 2017, OneD testified ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. E at 190:4-191:14. OneD pointed out its joint venture with an undisclosed foreign entity focusing outside the U.S. – a joint venture that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, was not disclosed to Nexeon until 10 months into discovery. Ex. D at 7. OneD also consistently refused to provide

any information about ████████████████████████████████████████████

████████████████ *See, e.g.,* Ex. E at 30:25-39:6, 61:16-62:7, 108:2-23; Ex. F at 149:5-151:12.

Moroever, OneD testified that ██████████████████████████████████████

███████████████. Ex. E at 163:14-24.

Nexeon was not able to take EaglePicher's deposition until February 2018, at which point

it testified ███████████████████████████████████████████████████

████████████████████████████████. Ex. G at 19:16-20:4, 25:10-19. The day

before the deposition, EaglePicher also provided an updated interrogatory response in which it

stated ████████████████████████████████████████████████████

██████. Ex. I at 3, 5, 6. In stark, and frankly unbelievable, contradiction to these sworn

statements, less than a month later, in response to Nexeon's motion to stay, EaglePicher

contended ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████. D.I. 151 at ¶5.

It was not until Nexeon filed its motion to stay and motion to dismiss without prejudice

that OneD and EaglePicher began to conveniently discuss other potential research plans. And the

only evidence Defendants has provided of those plans is the May 8, 2018 declaration of OneD's

CEO (Dr. Pluvinage). D.I. 183. Nexeon has not had the opportunity to test that declaration by

deposition and address the inconsistencies between the testimony elicited during discovery and

the declaration, nor does Nexeon have any documentary evidence regarding the declaration. And

none of these plans were disclosed to the Court at the May 14, 2018 hearing. So rather than being

"insurmountable evidence," they are merely the untested and unsupported statements of a highly

interested witness.

4

However, even if taken at face value, Defendants' statements are merely about potential and speculative plans for ill-defined products. Assuming these products are made using the same processes already disclosed during discovery, resulting in products with no colorable differences, a blanket motion to dismiss will presumably apply to them. Similarly, if the eventual products developed are not colorably different from the actual products addressed during discovery, the motion to dismiss will presumably apply to them. But given that Nexeon has no real information about any of these speculative processes or products, there is nothing Nexeon can do to raise an allegation of infringement of the asserted claims at this point, and without the actual spectre of suit, there is nothing to create declaratory judgment jurisdiction for a counterclaim.

Nexeon agrees with Defendants that entering a motion to dismiss will have specific *res judicata* effects with respect to potential future products. But the potential of undefined future products does not necessitate the qualifying language Defendants seek to include in an order granting the motion. If Defendants are now to be allowed to rely on a bevy of previously undisclosed post-discovery arrangements that contradict their testimony during discovery in order to defeat Nexeon's motion to dismiss, then the Court should fully reopen fact and expert discovery, order Defendants to produce all materials related to these arrangements, and order Defendants to produce samples and/or specifications (if samples do not yet exist) for testing. If all of these newly-identified arrangements are still merely speculative or in early discussion stages as indicated in the declarations, without defined end products, then there is no basis to deny the motion to dismiss. Moreover, the order should not extend to SiNANOde percentages

██████████████████████████████████████████████████

██████████████████████████████████████████████████. Thus

the Court should decline to adopt Defendants' overly broad qualifying language and instead enter Nexeon's proposed order.

> B.   The Court Need Not Address Anyone Other Than the Defendants in Granting Nexeon's Motion to Dismiss

Defendants contend that the dismissal must specifically and generically cover Defendants' customers, licensees "or" joint venture partners. But Defendants arguments are both overly broad in their attempt to include entities that they have repeatedly argued are irrelevant to the issues in the case, as noted above. Moreover, qualifying language as suggested by Defendants is unnecessary as the tests for whether res judicata and/or collateral estoppel apply are well-established and can be readily applied by the Court should a future litigation (which Defendants have not established is actually likely to occur) arise.

Defendants misrepresent the *Oracle* case, suggesting that it held a party was actually precluded from relitigating because it was adequately represented. D.I. 195 at 14. Instead, the citation from Oracle given by Defendants was to one of four factors to be assessed in determining whether collateral estoppel would apply. *Oracle Corp. v. Parallel Networks, LLP*, 588 F.Supp.2d 549, 567 (D.Del. 2008). Indeed, the *Oracle* court held that "it is clear on all… relevant grounds [other than privity, which it did not address] that collateral estoppel is inappropriate in this case." *Id*. Defendants' citation of the 1978 Pennsylvania *Molinaro* case is no better as it is simply a general application of *res judicata* principles and the Kessler doctrine in 1978, suggesting that a purchaser of the products in suit could not be sued for infringement after a dismissal with prejudice. *Molinaro v. Am. Tel. and Tel. Co.*, 460 F.Supp. 673 (E.D.Pa. 1978).

But neither the Kessler doctrine nor general principles of *res judicata* state that <u>any</u> party having a relationship with the Defendants benefits from immunity with respect to the patents-in-

suit. Instead, it is parties that are in privity with the Defendants on issues where Nexeon had a fair opportunity to litigate and where dismissal was a decision on the merits on the same issues raised in a subsequent litigation. *See, e.g., McLaughlin v. Board of Trustees of National Elevator Industry Health Benefit Plan*, 686 Fed.Appx. 118, 121-122 (3d Cir. 2017); *Mondero v. Lewes Surgical & Medical Associates P.A.*, 2017 WL 262053 at *2 (D. Del. Jan. 18, 2017).

Because Defendants have failed to establish a need to generically detail additional non-parties covered by a dismissal, the Court should decline to enter Defendants' proposed language, and instead enter Nexeon's proposed order.

## III.     Consideration of Costs and Fees is Premature, But in Any Event Defendants Are Entitled to Neither

### A.     Defendants Would Not Be Entitled to Attorneys' Fees Even If the Issue Were Ripe for Consideration

As an initial matter, consideration of fees is not ripe at this time. But more importantly, Defendants cannot establish that this is an exceptional case, even under the standards of *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 188 L.Ed.2d 816 (2014). This Court's fees rulings post-*Octane* make that clear, as Nexeon pointed out to Defendants in responding to a letter alleging that fees were appropriate. Ex. Q. Defendants' motives with respect to fees have become even more transparent in recent weeks. As the Court suggested the parties do during the May 14, 2018 hearing (D.I. 190 at 23:4-11), Nexeon contacted Defendants to attempt to reopen settlement negotiations. After some back and forth, █████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███. Exs. J, K. Thus, rather than being entitled to fees, Defendants' own bad faith litigation

behavior should preclude them from even receiving the opportunity to properly submit a request for fees.

> B.   Defendants Should Not Be Awarded Costs Even If They Are Eventually Deemed A Prevailing Party

Even if the Court agrees that Defendants are the prevailing party – an issue that has not been properly raised – that does not end the inquiry into whether costs should be granted. The Court retains discretion as to whether and to what extent costs should be awarded. *See, e.g, Roche Diag. Op, Inc. v. Abbott Diabetes Care, Inc.*, 2018 WL 2108197 at *2 (D.Del May 7, 2018). Nexeon was required to engage in extensive discovery to get to the point of determining that there was little to actually pursue. As a single example, despite the fact that OneD now relies heavily on the offshore joint venture relationship it established in October 2016, ███████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████████████████████████. Ex. D at 7.

OneD also frustrated Nexeon's efforts to analyze actual SiNANOde materials. Originally, OneD provided ██████████████████████████████████████████. Ex. L. OneD later provided ████████████████████████████████████████ ██████████. Exs. H, M. Despite specific Rule 34 requests, neither OneD nor EaglePicher ever provided samples of electrodes or batteries. And Defendants went so far as to try and preclude Nexeon from using Dr. Sailor to analyze the SiNANOde materials – an issue on which Nexeon prevailed.  In addition, as noted above, Defendants' testimony about their plans for SiNANOde has been a hodgepodge of contradictions, many of which arose after the close of fact discovery in questionable declarations filed as part of Defendants' oppositions to Nexeon's motions to stay or dismiss.

Nexeon has attempted to litigate the case in good faith and has taken actions at appropriate times. The Court should therefore exercise tis discretion to deny an award of fees even if it deems Defendants to be the prevailing party.

## IV.     Defendants' "Statement of Facts" is Highly Argumentative, Inaccurate, and Ultimately Irrelevant to the Issue at Hand

Defendants spend 5 full pages on a statement of "facts," even the titles of which are argumentative, in an apparent attempt to have the Court enter summary judgment in their favor on all claims and then award fees. Defendants' so-called "facts" misstate the text of the actual motion to dismiss and ignore their own documents and highly conflicting testimony. But at the end of the day, in addition to being mere argument, the majority of these "facts" are irrelevant to Nexeon's motion to dismiss and should be ignored. The sole portion of these "facts" that is even marginally relevant is the percentage silicon in SiNANOde that is at issue with respect to the motion to dismiss; and here Defendants glaringly fail to inform the Court of their own testimony indicating ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████.

Sections II(C)-(E) of Defendants' Statement of Facts regurgitate claims that Defendants have made repeatedly throughout the case, and which Nexeon has consistently addressed in any number of recent filings. Because these sections are actually irrelevant to the Court's consideration of the pending motion, Nexeon will not address them again here, except to say that Nexeon disagrees, as was evident from the very citations Defendants make to the May 14, 2018 hearing, where Nexeon indicated that injunction could still be pursued in the case (prior to the filing of the pending motion).

**V.     A Stay Until the Court Decides on the Motion to Dismiss Creates No Prejudice to Defendants but Instead Promotes Efficiency in This Case**

Nexeon believes the Court intends to rule expeditiously on this motion. Thus, any stay is likely to be of limited duration, thereby preventing prejudice to any party, particularly as there is no trial date in this case. But no matter what the timing for a ruling, a stay will only lead to efficiencies in this case. Expert depositions are being scheduled and summary judgment motions are to be filed on July 6 under the current schedule. A grant of Nexeon's motion to dismiss will obviate the need for substantial work on those issues, thus it makes sense to stay so that the parties can potentially save time and expense.

**VI.     Conclusion**

Defendants have failed to establish that a dismissal with prejudice will result in any concrete and defined prejudice to them, and thus have failed to provide any justification for maintaining their counterclaims. Instead, Defendants overreach and claim that they will be prejudiced unless the dismissal is improperly extended to (1) colorably different products and processes and (2) parties not in privity with Defendants. Therefore, Nexeon respectfully requests that the Court grant Nexeon's motion for dismissal of the Second Amended Complaint and dismissal of Defendants' counterclaims. Nexeon further requests that the Court order each party to bear its own costs and fees.

Dated: June 12, 2018

      */s/ Mary B. Matterer*
Mary B. Matterer (#2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
mmatterer@morrisjames.com

OF COUNSEL:

S. Richard Carden
Ann C. Palma
McDONNELL BOEHNEN
HULBERT & BERGHOFF LLP
300 South Wacker Drive
Chicago, Illinois 60606
(312) 935-2379
carden@mbhb.com
palma@mbhb.com         *Attorneys for Plaintiff Nexeon Ltd.*

# EXHIBIT   A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **NEXEON LIMITED,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **C.A. No. 15-955 (RGA)** |
| | ) | |
| **EAGLEPICHER TECHNOLOGIES, LLC** | ) | |
| **and ONED MATERIAL LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### [PROPOSED] ORDER

Having reviewed and considered the Parties filings, the Court hereby:

1. GRANTS Nexeon's Motion to Dismiss the Second Amended Complaint with prejudice.

2. GRANTS Nexeon's Motion to Dismiss Defendants' Counterclaims for lack of jurisdiction.

3. ORDERS that the parties bear their own costs and fees for this case.

SO ORDERED, this __ day of _____, 2018.


_____
Richard G. Andrews
United States District Judge

# Exhibit B

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# Exhibit C

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# Exhibit D

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# Exhibit E

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

# Exhibit F

# EXHIBIT   REDACTED
# IN   ITS   ENTIRETY

# Exhibit G

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

# Exhibit H

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# Exhibit I

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

# Exhibit J

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

# Exhibit K

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# Exhibit L

# EXHIBIT REDACTED IN ITS ENTIRETY

# Exhibit M

# EXHIBIT  REDACTED
# IN  ITS  ENTIRETY

# Exhibit N

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# Exhibit O

https://www.onedmaterial.com/technology    Go

3 captures
8 Mar 2015 – 10 Mar 2017

MAR   MAR   APR
◀ 10 ▶
2015   2017   2018

▼ About this capture

 **material**

SECURE PORTAL     MEDIA     CONTACT US



# UNIQUE TECHNOLOGY





# NEW ANODE NANOMATERIAL IMPROVES LITHIUM-ION BATTERIES

SiNANOde™ is a high-performance silicon-graphite nanomaterial capable of significantly increasing the energy density and cycle life of a large variety of Lithium-ion batteries.

SiNANOde™ consists of silicon nanowires grown on various types of commercially available graphite powder. It can be produced in various grades ranging from 8% to 50% silicon to carbon weight ratio.

The performance of full cells using SiNANOde™ can be optimized to meet the specific requirements of each application.

SiNANOde™ is well suited for many market segments ranging from critical Military and Medical applications, to higher volume applications in Consumer Electronics and Electrical Vehicles.

REQUEST MORE INFORMATION

## COMPANY OVERVIEW

Copyright © 2016 OneD Material, LLC – All Rights Reserved Trademark Terms

## CONTACT US

2625 Hanover Street
Palo Alto, California 94304

ph: 650.331.2100
 e: info@onedmaterial.com

# Exhibit P

# EXHIBIT   REDACTED
# IN   ITS   ENTIRETY

# Exhibit Q

# EXHIBIT REDACTED
# IN ITS ENTIRETY

# Exhibit R

2017 WL 262053
Only the Westlaw citation is currently available.
United States District Court,
D. Delaware.

Dr. Nancy MONDERO, Judy L. Howett
NP, Margaret M. Sawyer, Tanikka R.
Miller, and Marian L. Long, Plaintiffs;
v.
LEWES SURGICAL & MEDICAL ASSOCIATES
P.A., a Delaware Professional Association, Semaan
M. Abboud M.D., Beth E. Bittner, Defendants.

Civil Action No. 14–588–RGA
|
Filed 01/18/2017

**Attorneys and Law Firms**

Dean A. Campbell, Law Office of Dean A. Campbell
LLC, Georgetown, DE, for Plaintiffs.

Gregory D. Stewart, Law Office of Gregory D. Stewart,
P.A., Middletown, DE, for Defendants.

Beth E. Bittner, Milton, DE, pro se.

## MEMORANDUM ORDER

Richard G. Andrews, United States District Judge

**\*1** Pending before the court is Plaintiff Howett's motion
for leave to amend her complaint. (D.I. 74). On November
3, 2016, I denied Defendants' motion for summary
judgment on Plaintiff Howett's fraud/restitution claim.
(D.I. 71 at 9; D.I. 72). I did so "out of basic fairness"
and encouraged Plaintiff Howett "to amend her claim to
state an actionable theory." (D.I. 71 at 9 10). Plaintiffs
proposed amended complaint contains the following
claims: (1) Title VII of the Civil Rights Act, Retaliation,
(2) Fraud/Restitution of Meaningful Use Funds (as to
Howett only), (3) Breach of Implied Contract (Quasi
Contract) (as to Howett only), (4) Breach of Fiduciary
Duty (as to Howett only), (5) Intentional Interference
with Business Relations (as to Howett only), (6) Common
Law Misappropriation/Civil Theft (as to Howett only), (7)
Unjust Enrichment (as to Howett only), (8) Conversion
(as to Howett only), and (9) Replevin (as to Howett only).
(D.I. 74 at pp. 15 25).

## I. LEGAL STANDARD

Under the relevant portion of Fed. R. Civ. P. 15(a),
Plaintiffs may amend their pleading with the court's leave.
The "grant or denial of an opportunity to amend is
within the discretion of the District Court ...." *Shane v.
Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). A court should
"freely give leave when justice so requires." Fed. R. Civ.
P. 15(a)(2). "Amendment, however, is not automatic."
*Szubielski v. Pierce*, 152 F. Supp. 3d 227, 232 (D. Del.
2016). Leave to amend may be denied upon a showing
of "undue delay, bad faith or dilatory motive on the
part of the movant, repeated failure to cure deficiencies
by amendments previously allowed, undue prejudice to
the opposing party by virtue of the allowance of the
amendment, futility of amendment, etc." *Foman v. Davis*,
371 U.S. 178, 182 (1962). "Futility of amendment occurs
when the complaint, as amended, does not state a claim
upon which relief can be granted." *Szubielski*, 152 F. Supp.
3d at 233.

## II. DISCUSSION

Defendants argue that Plaintiff's motion should be denied
based on futility. Defendants assert that the proposed
complaint fails under collateral estoppel and res judicata.
I disagree.

### A. Collateral Estoppel

"The doctrine of collateral estoppel is designed to provide
repose and put a definite end to litigation." *Columbia Cas.
Co. v. Playtex FP, Inc.*, 584 A.2d 1214, 1216 (Del. 1991).
"Under ... [this] doctrine, where a question of fact essential
to the judgment is litigated and determined by a valid and
final judgment, the determination is conclusive between
the same parties in a subsequent case on a different cause
of action." *Id.*

Here, the core issue is whether Medicare and Medicaid
Electronic Health Records Incentive Program funds
("incentive funds") possessed by Defendant Lewes
Surgical properly belongs to Plaintiff Howett. Defendant
argues that this issue was litigated in the previous Superior
Court action.

The relevant facts are as follows. The complaint in the
Superior Court action asserts a cause of action for "Breach
of Employment Contract and Implied Covenant of Good

2017 WL 262053

Faith and Fair Dealing" by Howett against Lewes Surgical. (D.I. 77 1 at 5). Howett alleged, "Defendant failed to properly calculate [Howett]'s income for purposes of determining bonus payments," (*Id.* 35) and that such a bonus was owed to Howett (*Id.* ¶¶ 18, 29 38). In the Amended Pre Trial Stipulation and Order, Howett claimed that she "earned $198,294.00 for Lewes Surgical in 2010." (D.I. 59 4 at 5). This was based on a spreadsheet. (*Id.*). After some exclusions and some calculations, the bonus owed she alleged to equal $40,142.40. (*Id.*). Defendant claims that Howett's bonus calculations relied on data suggesting that incentive funds belonged to Defendant. (D.I. 77 at 3; D.I. 77 1 at 10, 12 14; D.I. 83 at 2). It appears that Howett did rely on such data to support her bonus calculations. Presumably, had her data not relied on the implied fact that the incentive money belonged to Defendant, the bonus figure she sought would have been lower. It is unclear from the record before this Court what position, if any, the Superior Court took as to this issue, because the Order of Judgment only stated that, as to "Howett's claim for recovery of bonus money withheld, the Court finds in favor of Defendant and against Plaintiff and therefore, the claim is dismissed." (D.I. 77 2 at 7 ¶ V).

**\*2** I do not think that Defendant has adequately shown, at this stage, that the core issue in the proposed amended complaint was essential to the prior action. It is unclear from the Superior Court's Order of Judgment what role incentive funds played in the ultimate outcome. In other words, it does not necessarily follow from the Order of Judgment that the incentive funds did not properly belong to Howett. The Superior Court did not make any findings as to whether it accepted the fact that the incentive funds were in fact Defendant Lewes Surgical's. Rather, the Order of Judgment suggests that the opposite conclusion might be true. (*See* D.I. 77 2 at 7 ¶ VII ("As to [Lewes Surgical's] Claim against Nancy Mondero for recovery of Electronic Medical Records incentive money, the claim is dismissed.")). Thus, Defendant has failed to show, at this stage, that Plaintiffs motion to amend is futile on collateral estoppel grounds.

**B. Res Judicata**

"Res judicata operates to bar a claim where the following five-part test is satisfied: (1) the original court had jurisdiction over the subject matter and the parties; (2) the parties to the original action were the same as those parties, or in privity, in the case at bar; (3) the original

cause of action or the issues decided was the same as the case at bar; (4) the issues in the prior action must have been decided adversely to the appellants in the case at bar; and (5) the decree in the prior action was a final decree." *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 192 (Del. 2009). "Delaware, like the federal courts, follows a transactional approach to res judicata." *Id.* at 193. "Determining whether two claims arise from the same transaction requires pragmatic consideration, with the fact finder 'giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' " *Id.* "Two claims 'derive[d] from a common nucleus of operative fact[s]' arise from the same transaction." *Id.*

Federal courts consider the following four factors to determine whether the original cause of action is the same as that in the case at bar: "(1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same." *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984) (citations omitted). "These factors are the components of 'an essential similarity of the underlying events,' and provide sufficient guidance for assessing when there is not a single cause of action." *Id.* The *Athlone* factors provide a useful framework for considering the factors for determining whether two claims arise from the same transaction in *LaPoint*.

I do not think that Defendant has adequately shown that, at this stage, the present suit is based on the same cause of action as the prior suit. Under the first *Athlone* factor, the prior suit complained that Defendant failed to provide Howett with her bonus money. Here, Howett is complaining that Defendants failed to give her incentive funds that she alleges are rightfully hers. The prior suit demanded her bonus money as the form of relief. Here, she is demanding her incentive funds, which is for a different wrong. This factor weighs in favor of Howett.

Mondero v. Lewes Surgical & Medical Associates P.A., Slip Copy (2017)

2017 WL 262053

As to the second factor, the theory of recovery in the prior suit for the recovery of the bonus money, is based on breach of contract. Here, at least with respect to replevin, Howett has to show that the incentive funds were her property. That is a different theory of recovery. This factor weighs in favor of Howett.

**\*3** As to the third factor, Defendant has extensively shown that the witnesses and documents necessary at trial here are the same as those used in the prior action. (*See generally* D.I. 77; D.I. 83). This factor heavily weighs in favor of Defendant.

As to the last factor, a comparison of the complaint of the prior action and the proposed amended complaint in the present action shows that the material facts alleged are different. The complaint in the prior action does not address the issue of who owns the incentive money as between Howett and Lewes Surgical. (*Compare* D.I. 77 ¶ 1 at 2  8, *with* D.I. 74). This factor weighs in favor of Howett.

As an additional consideration, Defendant urges that I consider that Plaintiff could have amended her complaint in the prior action to include what she is asserting before me now. (D.I. 83 at pp. 2  3). This argument has neutral weight, because while this may be true, it appears that Plaintiff has colorable reasons for why doing so may not have been feasible or practical. (*See* D.I. 80 at 11  13).

This is a very close call. Overall, I find that Defendant has failed to show, at this stage, that Plaintiffs motion to amend is futile on res judicata grounds.

**NOW, THEREFORE**, at Wilmington this 17 day of January, 2017, it is **HEREBY ORDERED** that Plaintiffs' motion for leave to amend (D.I. 74) is **GRANTED**. Some of the counts replace counts I previously resolved against Howett. She should not interpret this Order to mean that I am going to reconsider my previous decisions.

**All Citations**

Slip Copy, 2017 WL 262053

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 2108197
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.

ROCHE DIAGNOSTICS OPERATIONS, INC.
and Corange International Limited, Plaintiffs,

v.

ABBOTT DIABETES CARE, INC.; Abbott Diabetes
Care Sales Corporation; Bayer Healthcare, LLC;
Diagnostics Services, Inc.; Lifescan, Incorporated,
and Nova Biomedical Corporation, Defendants.

Civil Action No. 07–cv–753–RGA
|
Signed 05/07/2018

**Attorneys and Law Firms**

Philip A. Rovner, Potter Anderson & Corroon, LLP, Wilmington, DE, Paula S. Fritsch, Pro Hac Vice, Richard A. Machonkin, Pro Hac Vice, Grantland G. Drutchas, for Plaintiffs.

Mary W. Bourke, Womble Bond Dickinson (US) LLP, Rodger Dallery Smith, II, Michael J. Flynn, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE, Jaysen Chung, William C. Rooklidge, for Defendants.

### MEMORANDUM ORDER

Richard G. Andrews, United States District Judge

**\*1** Presently before the Court is Plaintiffs' (collectively, "Roche") motion for review of the Clerk's taxation of costs. (D.I. 1103). The issues are fully briefed. (D.I. 1104, 1107, 1108). For the reasons stated herein, Roche's motion is **DENIED**.

### I. BACKGROUND

Roche sued Nova for patent infringement on November 21, 2007. (D.I. 1). On January 11, 2008, Nova filed patent and non-patent counterclaims. (D.I. 47 at 7 13). At a pretrial hearing on January 21, 2010, Judge Farnan indicated that he would resolve Roche's patent claims with a Rule 54(b) judgment in Nova's favor and proceed with a separate trial on Nova's non-patent counterclaims. (D.I. 859 at 5:24 6:6, 6:17 8:1). Following the trial of Nova's counterclaims, a jury returned a verdict in Roche's favor

on February 2, 2010. (D.I. 807). The Court subsequently denied Nova's post trial motions. (D.I. 847, 848). On July 27, 2010, the Court entered judgment in Roche's favor on Nova's counterclaims and entered judgment in Nova's favor on Roche's patent claims. (D.I. 850, 851). Both parties appealed. (D.I. 852, 863). On appeal, the Federal Circuit consolidated Roche's patent claims and Nova's counterclaims, affirming the district court's judgment on Nova's counterclaims but vacating the judgment of non-infringement and remanding for further proceedings on claim construction for the term "electrode." (D.I. 948 1 at 2 3). The Federal Circuit's Mandate was filed in the district court on March 5, 2012. (D.I. 948). Roche timely filed a Bill of Costs, which Nova opposed, and which the Clerk denied as premature. (D.I. 949, 954, 997).

After more than two years addressing the claim construction for "electrode," the Court entered a final judgment of non-infringement in Nova's favor on January 16, 2015. (D.I. 1032). Roche again appealed. (D.I. 1035). On appeal, the Federal Circuit affirmed the district court's judgment of non-infringement. (D.I. 1041 1 at 3). The Federal Circuit's Mandate was filed in the district court on October 31, 2016. (D.I. 1041).

Both parties filed timely motions for attorneys' fees, which I referred to Judge Thynge. (D.I. 1049, 1050). On October 3, 2017, Judge Thynge issued a Report and Recommendation ("R & R"), in which she recommended that I deny both parties' motions. (D.I. 1091). The R & R also found that the district court had treated Roche's patent claims as though they had been raised in a separate lawsuit from Nova's non-patent counterclaims, and that Roche was the prevailing party with regard to Nova's non-patent counterclaims. (D.I. 1091 at 35). Both parties filed objections to the R & R, and each responded to the other's objections to the R & R. (D.I. 1092, 1093, 1097, 1098). Nova's objections did not include any objection to the R & R's finding that Roche's patent claims and Nova's non-patent counterclaims were separate and distinct, or to the finding that Roche was a prevailing party with respect to Nova's non-patent counterclaims. (*See* D.I. 1092). But Nova did raise these objections in its response to Roche's objections to the R & R. (D.I. 1097, p. 1 n.3). In resolving the parties' motions for attorneys' fees, I adopted the findings of fact and conclusions of law in the R & R. (D.I. 1110 at 1).

**\*2** Roche also filed a timely renewed bill of costs for its successful defense of Nova's counterclaims (D.I. 1042), to which Nova objected (D.I. 1047). Citing Local Rule 54.1(c), on February 2, 2018, the Clerk denied Roche's renewed bill of costs on the basis that the determination of the prevailing party was a matter "within the discretion of the Court." (D.I. 1102 at 3 4). Roche then filed a motion for review of the Clerk's taxation of costs. (D.I. 1103). Nova now opposes Roche's motion. (D.I. 1107).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 54(d)(1) governs costs awards. It provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs   other than attorney's fees   should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). In patent cases, Federal Circuit law controls the prevailing party inquiry. *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1182 (Fed. Cir. 1996). To qualify as a prevailing party, a party must "have received at least some relief on the merits. That relief must materially alter the legal relationship between the parties by modifying one party's behavior in a way that 'directly benefits' the opposing party." *Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111 13 (1992) ).

"The degree of plaintiff's overall success goes not towards whether the plaintiff prevailed, but rather towards the reasonableness of the fee award." *Manildra*, 76 F.3d at 1182. The amount of a costs award to a prevailing party is governed by regional circuit law, because it "implicates considerations not unique to patent law, such as the litigants' behavior at trial." *Id.* at 1183. "[E]ven if a party satisfies the definition of prevailing party, the district court judge retains broad discretion as to how much to award, if anything." *Id.*

## III. DISCUSSION

Roche asserts that it is the prevailing party and argues that it "should be awarded its costs in connection with its successful defense of Nova's claims against Roche: $131,697.86." (D.I. 1104, p. 1). Nova submits that it would be appropriate for me to find that there is no prevailing party in this case under Local Rule 54.1(c). (D.I. 1107, p. 1).

Key to determining the prevailing party is whether Roche's patent claims should be treated as a separate case from Nova's non-patent counterclaims.

According to Roche, the patent claims and non-patent counterclaims should be considered separate cases because the district court treated them that way. (D.I. 1104, pp. 2 3). Judge Farnan entered a Rule 54(b) judgment on Roche's patent claims, tried Nova's non-patent counterclaims separately, and set separate discovery procedures for the patent and non-patent claims. (*Id.*). Judge Thynge's R & R regarding the motions for attorneys' fees (D.I. 1049, 1050) found that Roche's patent claims and Nova's non-patent counterclaims "are distinctly different claims for relief that are based on different facts and legal theories and the court has treated those unrelated claims as if they had been raised in separate lawsuits." (D.I. 1091 at 35). The R & R also concluded that Roche was the prevailing party for purposes of Nova's counterclaims. (*Id.*).   Nova waited until its responses to Roche's objections to the R & R to object to Judge Thynge's findings that Roche's patent claims are separate from Nova's counterclaims and that Roche is the prevailing party with respect to Nova's counterclaims. (*See* D.I. 1092 (failing to raise objections to separateness of claims or to determination that Roche is a prevailing party); D.I. 1097, p. 1 n.3 (objecting to finding that Roche is a prevailing party in reply to Roche's objections to the R & R) ). Therefore, Roche argues, Nova has waived any argument that Roche's patent claims were not treated as a separate case from Nova's counterclaims or that Roche is the prevailing party with respect to Nova's counterclaims. (D.I. 1104, p. 1; D.I. 1108, pp. 5 6).

1       I adopted the findings of fact and conclusions of law in the R & R when resolving Roche s and Nova s motions for attorneys fees. (D.I. 1110 at 1).

**\*3** Nova counters that "the only reason that Roche's patent claims and Nova's counterclaims were not tried together to the jury is because the Court granted Nova's summary judgment motion at the pretrial conference, and a judgment of non-infringement was granted in Nova's favor." (D.I. 1107, p. 5). According to Nova, "separate allowances for discovery" on the non-patent counterclaims existed merely because "certain discovery related only to Nova's counterclaims and were not relevant to the other defendants." (*Id*). Nova notes, and Roche acknowledges, that the Federal Circuit consolidated Roche's appeal of claim construction issues

Case 1:15-cv-00955-RGA  Document 201  Filed 06/20/18  Page 57 of 57 PageID #: 10687
Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care, Inc., Slip Copy (2018)

2018 WL 2108197

on the patent claims and Nova's appeal on the counterclaims. (D.I. 1107, p. 6; D.I. 1104, p. 4 n.6; D.I. 852; D.I. 863). Nova's answering brief does not address Roche's waiver argument. (*See* D.I. 1107).

I agree with Roche that Nova has waived any argument that the patent and non-patent claims were not treated as separate cases and any argument that Roche is not the prevailing party with respect to Nova's non-patent counterclaims. [2] As Roche points out, Nova's objections to the R & R did not include these arguments. (*See* D.I. 1092). Nova thus failed to timely object to the R & R's findings (1) that Roche is the prevailing party with respect to Nova's non-patent counterclaims or (2) that the Court treated Roche's patent claims and Nova's non-patent counterclaims as separate cases, because Nova did not raise these arguments in its objections to the R & R. (*See* D.I. 1092; D.I. 1097, p. 1 n.3). Further, Nova has not addressed Roche's waiver argument or offered any justification for its delay in raising objections to the relevant findings in the R & R. (*See* D.I. 1107; Fed. R. Civ. P. 72(a) (establishing 14 day statutory period for a party to serve objections to a magistrate judge's R & R); *Grandison v. Moore*, 786 F.2d 146, 148 (3d Cir. 1986) ("We agree with the holding in *Zelaskowski v. Johns Manville, Corp.*, 578 F. Supp. 11, 13 (D.N.J. 1983), that 'late filing [of objections to a magistrate judge's R & R] is permissible if the moving party adequately justifies his request for relaxation of the time constraints.' ") ). Additionally, during the January 14, 2010 pretrial hearing, Judge Farnan opined that Roche's patent claims could be treated separately from Nova's non-patent counterclaims. (D.I. 858 at 37:14 19 ("I think there is some factual overlap, but I don't think there is issue overlap. And I think the counterclaims and the patent issues can be tried separately, both in a legal sense and in a time sense.") ). Accordingly, I conclude that the Court treated Roche's patent claims and Nova's non-patent counterclaims as separate cases, and that Roche is the prevailing party with respect to Nova's non-patent counterclaims.

2    With respect to Nova s non patent counterclaims, Roche meets the requirements to be a prevailing party. Res judicata will preclude Nova from reasserting its non patent counterclaims against Roche in the future. As a result of defeating Nova s non patent counterclaims, Roche benefits because it avoids monetary liability on those claims.

Concluding that Roche is the prevailing party with respect to Nova's non-patent counterclaims does not end the inquiry, as I retain discretion as to the amount of any costs award. As I previously found when deciding the parties' motions for attorneys' fees, "Roche brought meritless ... litigation and Nova vigorously defended. Roche got what meritless litigation deserves, which is nothing. It is true that Nova's meritless counterclaims also got nothing, but if this were boxing, Roche's claims would have been the main event while Nova's counterclaims were the undercard." (D.I. 1110 at 13). Though the Court treated Nova's non-patent counterclaims and Roche's patent claims as two separate cases, Nova's non-patent counterclaims can be viewed ultimately as a response to Roche's meritless patent claims. They would never have been asserted but for Roche bringing suit. I thus do not think Roche should be rewarded for its meritless litigation with a recovery of the costs it incurred in defending Nova's non-patent counterclaims. As a matter of discretion, I therefore decline to award Roche any costs.

**IV. CONCLUSION**

**\*4**  For the reasons stated above, Plaintiffs' motion for review of the Clerk's taxation of costs is **DENIED**.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2018 WL 2108197

End of Document

© 2018 Thomson Reuters. No claim to original U.S. Government Works.